Garry, J.R
(dissenting). We respectfully dissent. Although we agree with the majority in large part, we disagree with the final and critical step in the analysis. We agree that the 2006 transaction in which Edmund Felix Hennel (hereinafter decedent) signed the deed and executed the will constituted his acknowledgment of an agreement that the mortgage would be satisfied from estate assets in exchange for petitioners’ services in managing the property during his lifetime. We further agree that the statute of frauds applies here, as there was no written promise that decedent would not revoke the 2006 will or would include a direction to satisfy the mortgage in any future will (see EPTL 13-2.1 [a] [2]; General Obligations Law § 5-701 [a] [1]). It bears specifically noting that there was no evidence that decedent expressed any such promise in any form. On the contrary, the entire transaction was structured to be revocable; in addition to the ambulatory nature of decedent’s 2006 will, the deed conveying the remainder interest in the premises to petitioners specifically reserved a power of appointment and, thus, decedent remained entirely free to transfer that interest to someone else at any time before he died (see EPTL 10-4.1). For these reasons, we wholly agree with the majority that petitioners cannot enforce decedent’s promise to satisfy the mortgage with estate assets unless they prove that promissory estoppel was properly applied for this purpose. We depart from the majority as we find that this heavy burden was not satisfied.
The doctrine of promissory estoppel is applied to enforce an oral agreement only upon proof “that it would be unconscionable to invoke the statute of frauds to bar such a claim” (Fleet Bank v Pine Knoll Corp., 290 AD2d 792, 797 [2002] [emphasis added]). In the larger context of contract law, an unconscionable agreement is one deemed to be “grossly unreasonable,” where there is “some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party” (Warren Elec. Supply v Davidson, 284 AD2d 869, 870 [2001] [internal quotation marks and citations omitted]). It is a contract that “no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense” (Lounsbury v *1125 Lounsbury, 300 AD2d 812, 814 [2002] [internal quotation marks, brackets and citations omitted]; see LaSalle Bank N.A. v Kosarovich, 31 AD3d 904, 906 [2006]). A similarly demanding standard applies in the context of promissory estoppel.
“The strongly held public policy reflected in New York’s [s]tatute of [flrauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result” (Philo Smith & Co., Inc. v USLIFE Corp., 554 F2d 34, 36 [2d Cir 1977]). Thus, to warrant the application of promissory estoppel as a bar to the statute of frauds, a party must demonstrate egregious harm beyond the ordinary financial losses that would result from a breached agreement (see e.g. Carvel Corp. v Nicolini, 144 AD2d 611, 612-613 [1988] [loss was not unconscionable when licensee relinquished another business, incurred various expenses and worked to develop business goodwill in reliance on an oral promise to renew a licensing agreement]; American Bartenders School v 105 Madison Co., 91 AD2d 901, 902 [1983], affd 59 NY2d 716 [1983] [loss was not unconscionable when school reduced its staff, student body and general operation in reliance on landlord’s oral promise to reduce its rent]; Ginsberg v Fairfield-Noble Corp., 81 AD2d 318, 320-321 [1981] [employee did not sustain unconscionable injury by giving up a good position in reliance on the promise of a better job]).
This Court previously found issues of fact as to whether a debtor incurred unconscionable injury when, relying upon a lender’s broken promise to provide business financing, the debtor not only lost part of her business, but also incurred more than $100,000 in debt, exhausted her personal resources, depleted her child’s college savings account, lost her home to foreclosure and had to sell her car (Fleet Bank v Pine Knoll Corp., 290 AD2d at 797; see also Buddman Distribs. v Labatt Importers, 91 AD2d 838, 838-839 [1982]). This record reflects no such severe and “irremediable change in position” (Philo Smith & Co., Inc. v USLIFE Corp., 554 F2d at 36). Petitioners sustained a loss, in that the building that they now own is worth less than they thought it would be when they agreed to repair, maintain and manage it during decedent’s lifetime. Nevertheless, they realized a significant benefit in exchange for their services. Despite the mortgage, the building retains substantial value; its appraised value is $235,000, the mortgage balance was about $92,000 at the time of the 2006 transfer and timely mortgage payments were made thereafter, leaving equity of about $150,000 when decedent died.
Moreover, petitioners did not personally absorb all of the *1126 building’s expenses. As the life tenant, decedent was entitled to collect and keep the rental income, but did not do so; instead, petitioners used the rental payments to pay the mortgage and cover other expenses, and decedent took tax deductions for these sums. Petitioners did not specify how much time they invested in maintaining the premises during the four years that elapsed between the agreement and decedent’s death and, significantly, there was no claim that petitioners’ management responsibilities were so overwhelming that they were forced to neglect other business responsibilities or sacrifice other opportunities. Further, they do not claim that the continuation of the mortgage encumbrance after decedent’s death transformed the building into a losing business proposition, or that they are now suffering any hardships resulting from the mortgage debt, such as difficulty in obtaining other business financing. Petitioners’ work undoubtedly benefitted decedent by relieving him of the responsibility of keeping up the property, but it likewise benefitted petitioners by protecting and enhancing the value of the building that they now own. They could sell the building, pay off the mortgage, escape the responsibilities of its management and realize the benefit of the equity at any time they choose.
If the mere fact that a promisee sustained a loss of any degree is found sufficient, without more, to invoke the doctrine of promissory estoppel, the requirement of unconscionability will have no meaning, and the policy objectives served by the statute of frauds will then be “severely undermined” (Philo Smith & Co., Inc. v USLIFE Corp., 554 F2d at 36). Petitioners were substantially compensated for their services. Their losses “represent [ed] nothing more than that which flowed naturally from the nonperformance of the remaining term[s] of the unenforceable agreement,” and the fact that they did not receive the full benefit that they expected to derive from the bargain is simply not so egregious or unjust as to reach the level of unconscionability (Stainless Broadcasting Co. v Clear Channel Broadcasting Licenses, L.P., 58 AD3d 1010, 1013 [2009]; see Coleman v CMI Transp., 222 AD2d 285, 285 [1995]; Swerdloff v Mobil Oil Corp., 74 AD2d 258, 263-264 [1980], lvs denied 50 NY2d 803, 913 [1980]). Accordingly, we would reverse.
Lynch, J., concurs. Ordered that the order is affirmed, with costs.